**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID B., | ) | |
| | ) | |
| Plaintiff(s) | ) | |
| | ) | |
| vs. | ) | Case No. 4:25-CV-839 SRW |
| | ) | |
| FRANK BISIGNANO, | ) | |
| Commissioner of Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant(s). | ) | |

**<u>MEMORANDUM AND ORDER</u>**

This matter is before the Court upon review of an adverse ruling by the Social Security Administration. The Court has jurisdiction over the subject matter of this action under 42 U.S.C. § 405(g). The parties consented to the exercise of authority by the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). Plaintiff filed a Brief in support of the Complaint. ECF No. 9. Defendant filed a Brief in Support of the Answer. ECF No. 12. Plaintiff filed a Reply. ECF No. 13. The Court has reviewed the parties' briefs and the entire administrative record, including the transcripts and medical evidence. Based on the following, the Court will reverse the Commissioner's denial of Plaintiff's application and remand the case for further proceedings.

**I.      Factual and Procedural Background**

On January 27, 2023, Plaintiff David B. protectively filed an application for disability insurance benefits under Title II, 42 U.S.C. §§ 401, *et seq.*, with an alleged onset date of May 26, 2022. Tr. 17, 19, 66, 173-76. The application was denied upon initial consideration and reconsideration. Tr. 97-101, 112-15. On December 12, 2023, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 118-19.

Plaintiff appeared for a telephonic hearing, with the assistance of counsel, on May 23, 2024. Tr. 33-64. Plaintiff testified concerning his disability, daily activities, and functional limitations. *Id*. During the hearing, the ALJ received testimony from vocational expert Alissa A. Smith. *Id*. On June 25, 2024, the ALJ issued an unfavorable decision finding Plaintiff not disabled. Tr. 14-32. Plaintiff filed a request for review of the ALJ's decision with the Appeals Council. Tr. 168-70. On April 23, 2025, the Appeals Council denied Plaintiff's request for review. Tr. 1-6. Accordingly, the ALJ's decision stands as the Commissioner's final decision.

With regard to Plaintiff's testimony, medical records, and work history, the Court accepts the facts as presented in the parties' respective statements of facts and responses. The Court will discuss specific facts relevant to the parties' arguments as needed in the discussion below.

## II.    Legal Standard

A disability is defined as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant has a disability "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" § 1382c(a)(3)(B).

The Commissioner follows a five-step sequential process when evaluating whether the claimant has a disability. 20 C.F.R. § 416.920(a)(1). First, the Commissioner considers the claimant's work activity. If the claimant is engaged in substantial gainful activity, the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see whether the claimant has a severe impairment "which significantly limits claimant's physical or mental ability to do basic work activities." *Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010); *see also* 20 C.F.R. § 416.920(a)(4)(ii). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007); *see also* 20 C.F.R. §§ 416.920(c), 416.920a(d).

Third, if the claimant has a severe impairment, the Commissioner considers the impairment's medical severity. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), (d).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, the Commissioner assesses whether the claimant retains the "residual functional capacity" ("RFC") to perform his or her past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(5)(i). An RFC is "defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011); *see also* 20 C.F.R. § 416.945(a)(1). While an RFC must be based "on all relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations," an RFC is nonetheless an "administrative assessment"—not a medical assessment—and therefore "it is the responsibility of the ALJ, not a physician, to determine a claimant's RFC." *Boyd v. Colvin*, 831 F.3d 1015, 1020 (8th Cir. 2016). Thus, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). Ultimately, the claimant is responsible for *providing* evidence relating to his RFC, and the Commissioner is responsible for *developing* the

claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). If, upon the findings of the ALJ, it is determined the claimant retains the RFC to perform past relevant work, he or she is not disabled. 20 C.F.R. § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC does not allow the claimant to perform past relevant work, the burden of production to show the claimant maintains the RFC to perform work which exists in significant numbers in the national economy shifts to the Commissioner. *See Brock v. Astrue*, 574 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work which exists in significant numbers in the national economy, the Commissioner finds the claimant not disabled. 20 C.F.R. § 416.920(a)(4)(v). If the claimant cannot make an adjustment to other work, the Commissioner finds the claimant disabled. *Id.* At Step Five, even though the *burden of production* shifts to the Commissioner, the *burden of persuasion* to prove disability remains on the claimant. *Hensley*, 829 F.3d at 932.

If substantial evidence on the record as a whole supports the Commissioner's decision, the Court must affirm the decision. 42 U.S.C. §§ 405(g); 1383(c)(3). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). "[T]he threshold for such evidentiary sufficiency is not high." *Id*. Under this test, the court "consider[s] all evidence in the record, whether it supports or detracts from the ALJ's decision." *Reece v. Colvin*, 834 F.3d 904, 908 (8th Cir. 2016). The Court "do[es] not reweigh the evidence presented to the ALJ" and will "defer to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence." *Id*. The ALJ will not be "reverse[d] merely because substantial evidence also exists in the record that would have supported a contrary

4

outcome, or because [the court] would have decided the case differently." *KKC ex rel. Stoner v. Colvin*, 818 F.3d 364, 370 (8th Cir. 2016).

### III.     The ALJ's Decision

Applying the foregoing five-step analysis, the ALJ found Plaintiff meets the insured status requirements of the Social Security Act through September 30, 2027. Tr. 19. Plaintiff has not engaged in substantial gainful activity since May 26, 2022, the alleged onset date. *Id*. Plaintiff has the following severe impairments: "depressive, bipolar and related disorders; anxiety." Tr. 19. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. Tr. 20-21. The ALJ found Plaintiff had the following RFC through the date last insured:

> [Plaintiff] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The individual is able to understand, remember and carry out simple instructions in the performance of simple, routine and repetitive tasks with no specific production rate work such as assembly line work or work that requires hourly quotas. The individual can use judgment to make simple work-related decisions. The individual can have occasional changes in routine work settings. The individual can have superficial contact with the public (where superficial is defined to mean the contact is incidental and not an essential function of the job) and only occasional interaction with coworkers and supervisors. The individual is limited to jobs in which he could work in proximity to but not in coordination with coworkers and supervisors.

Tr. 21.

The ALJ found Plaintiff is unable to perform any past relevant work as an office manager (*Dictionary of Occupational Titles* ("*DOT*") No. 169.1670-034) or caregiver (*DOT* No. 354.377-014), as actually or generally performed in the national economy. Tr. 26. Plaintiff was born on January 23, 1974 and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. *Id.* He has at least a high school education. *Id.* The ALJ found that the transferability of job skills is not material to the determination of disability because using

5

the Medical-Vocational Rules as a framework supports a finding that Plaintiff is "not disabled," whether or not the claimant has transferable job skills. *Id.*

Considering the Plaintiff's age, education, work experience, and residual functional capacity, the ALJ determined there are jobs that exist in significant numbers in the national economy that the claimant can perform. *Id.* Such representative occupations include dishwasher (*DOT* No. 318.687-010, with 107,000 jobs in the national economy), automobile detailer (*DOT* No. 915.687-034, with 34,000 jobs in the national economy), and warehouse worker (*DOT* No. 922.687-058, with 130,000 jobs in the national economy). Tr. 27. The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from May 26, 2022, through the date of his decision on June 25, 2024. *Id.*

## IV.    Discussion

Plaintiff asserts one assignment of error. He argues the ALJ failed in evaluating the consistency of Nurse Practitioner (NP) Kacey Patterson's medical opinion. As such, Plaintiff contends that substantial evidence does not support the RFC assessment, and this matter must be remanded for the ALJ to properly evaluate NP Patterson's opinion.

At the telephonic hearing before the ALJ, Plaintiff testified that NP Patterson was his treating psychiatrist and had been in her care for approximately a year and a half. Tr. 54. Plaintiff's first visit with NP Patterson was on October 24, 2022. Tr. 575. On this date, she observed him to have poor eye contact, a frustrated mood with restricted affect, poor insight and judgment, logical and goal directed thought processes, and intact memory and attention within normal limits. Tr. 577. On December 7, 2022, Plaintiff told NP Patterson that he suffered from depression, which interfered with his daily functioning and sleep. Tr. 589. Later in the month, he shared that he had passive suicidal ideations with thoughts on how to execute, although he denied intent, identified his dog as a protective factor, and reported marijuana use as a coping

mechanism. Tr. 595. On January 3, 2023, Plaintiff reported good sleep, walking when weather allowed, and denial of suicidal ideations. Tr. 602. NP Patterson noted that Plaintiff "does not think he's feeling depressed, but more disheartened." *Id.* On February 27, 2023, Plaintiff reported his mood was "about the same/ok," but that he was sleeping more due to boredom and depression and was having a resurgence of suicidal thoughts without intent to act. Tr. 781. During the same visit, NP Patterson indicated his insight and judgment were improving. Tr. 782.

On March 27, 2023, Plaintiff continued to report suicidal thoughts but denied worsening depression. Tr. 796. On June 12, 2023, Plaintiff showed mood improvement with medication adjustments. Tr. 815. On August 29, 2023, NP Patterson described Plaintiff's insight and judgment to be "fair." Tr. 837. On September 14, 2023, after his denial of disability benefits, Plaintiff's anti-depressant medication dosages were increased due to his report of heightened depression and passive suicidal thoughts. Tr. 843-44. On October 12, 2023, Plaintiff indicated he had not experienced suicidal thoughts for several weeks and was getting out of his house more frequently. Tr. 850. NP Patterson observed his thought process and associations to be logical and goal-oriented. Tr. 851.

On October 18, 2023, NP Patterson completed a Mental Medical Source Statement (MMSS), identifying his diagnosis as "Bipolar 1 Disorder, most recent episode manic, with psychotic features." Tr. 955-60. She indicated she had seen him for monthly appointments since October 24, 2022. Tr. 955. His treatment consisted of Abilify (a once monthly long acting injectable), Lithium, and Wellbutrin, which she described to provide a "partial response." *Id.* She noted that since entering her care he had not experienced any manic or psychotic symptoms, but was positive for depression, fatigue, decreased motivation, withdrawal, and chronic suicidal ideation. *Id.* Within the checklist portion of the MMSS form, NP Patterson marked off the following symptoms: anhedonia or pervasive loss of interest in almost all activities; blunt, flat or

7

inappropriate affect; change in personality (reported by his family); decreased energy; easily fatigued; emotionally withdrawn and isolated; feelings of guilt or worthlessness; mood disturbance; and bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes. Tr. 956-57.

NP Patterson opined that Plaintiff had a limited but satisfactory ability to interact with others; remember work-like procedures; understand and remember very short and simple instructions; carry out very short and simple instructions; work in coordination with or proximity to others without being unduly distracted; accept instructions and respond appropriately to criticism from supervisors, be aware of normal hazards and take appropriate precautions; and interact appropriately with the general public. Tr. 957-58. She indicated Plaintiff had a marked ability to understand, remember, or apply information; concentrate, persist, or maintain pace; adapt or manage himself; maintain attention for a two-hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; sustain an ordinary routine without special supervision; complete a normal workday and workweek without interruptions from psychologically based symptoms; ask simple questions or request assistance; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; understand and remember detailed instructions; carry out detailed instructions; deal with stress of semiskilled and skilled work; maintain socially appropriate behavior; adhere to basic standards of neatness and cleanliness; travel in unfamiliar place; and use public transportation. *Id.* Lastly, she considered Plaintiff to have an extreme limitation to perform at a consistent pace without an unreasonable number and length of rest periods; deal with normal work stress; and set realistic goals or make plans independently of others. *Id.* She did not believe Plaintiff had a low IQ or reduced intellectual

functioning and could manage benefits in his own best interest but predicted he would likely be absent from work more than four days per month. Tr. 958-60.

Subsequent to the completion of the MMSS, Plaintiff saw NP Patterson for additional follow-up appointments. On November 9, 2023, his mood was described as "fine," and he reported leaving his home approximately five days per week and completing 75% of chores. Tr. 1020-21. In early 2024, Plaintiff expressed situational grief related to his dog's illness and death, but mental-status examinations remained stable with a logical, goal-oriented thought process and fair insight and judgment. Tr. 1055-56. On April 25, 2024, Plaintiff indicated he was doing "alright," and his mood was "ok." Tr. 1062. He was occasionally spending time with his family but reported issues remembering if he took his medicine. *Id.*

In evaluating the medical opinion of NP Patterson, the ALJ wrote, in pertinent part:

> In October 2023, Kacey Patterson, PMHNP-BC, noted in a medical source statement that the claimant has had a partial response to treatment through medication, noting side effects of fatigue, however it is also noted that the claimant that the claimant [*sic*] had not had any recent manic or psychotic symptoms since he began receiving care at her office a year prior. She stated that his main issue at that time was depression, fatigue, decreased motivation, and social withdrawing (Ex. 10F/1).
>
> . . .
>
> The claimant's own treating source, Kacey Patterson, PMHNP-BC, opined that the claimant would be absent for more than four days per month from work due to his impairments. She also opined that the claimant has numerous marked and several extreme functional deficits in the claimant's mental abilities and aptitudes need to do unskilled work. (Ex. 10F/5). This opinion is supported by Ms. Patterson's history of treating the claimant, however the longitudinal record is consistent with lesser functional limitations as exemplified by the claimant's improvement and relative stabilization in the course of his treatment (Ex. 2F/1, 3-4, 22; 3F/37; 10F/1; 11F/12). The opinion is partially persuasive.

Tr. 24-26.

Plaintiff argues the ALJ's statement that NP Patterson's opinion "was not consistent with the longitudinal record" is not enough and required further explanation. ECF No. 9 at 7. Claims

filed after March 27, 2017, like Plaintiff's, require the ALJ to evaluate medical opinions pursuant to 20 C.F.R. § 404.1520c. This provision provides that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." 20 C.F.R. § 404.1520c(a). Rather, an ALJ is to evaluate the persuasiveness of any opinion or prior administrative medical finding by considering the: (1) supportability of the opinion with relevant objective medical evidence and supporting explanations; (2) consistency with the evidence from other medical sources and nonmedical sources in the claim; (3) relationship with the plaintiff, including length, purpose, and extent of treatment relationship, whether it is an examining source, and frequency of examination; (4) specialization; and (5) other relevant factors. 20 C.F.R. § 404.1520c(c).

Supportability and consistency are the most important factors; therefore, an ALJ must explain how he or she considered these factors in the decision. 20 C.F.R. § 404.1520c(b)(2). The more relevant the objective medical evidence and supporting explanations presented by a medical source are to *support* his or her medical opinions or prior administrative medical findings, and the more *consistent* medical opinions or prior administrative medical findings are with other medical sources and nonmedical sources, "the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. An ALJ may, but is not required to, explain how he or she considered the remaining factors. *Id*. *See Brian O. v. Comm'r of Soc. Sec.*, 2020 WL 3077009, at *4-5 (N.D.N.Y. June 10, 2020) ("Although the new regulations eliminate the perceived hierarchy of medical sources, deference to specific medical opinions, and assigning 'weight' to a medical opinion, the ALJ must still 'articulate how he or she considered the medical opinions' and 'how persuasive he or she finds all of the medical opinions.'") (quoting § 404.1520c(a), (b), alterations omitted). An ALJ must articulate how persuasive he found all

10

medical opinions and prior administrative medical findings in a claimant's case record. §

404.1520c(b).

An ALJ's mere use of the word "consistent" does not satisfy the regulatory requirement. *Martini v. Kijakazi*, 2022 WL 705528, at *4 (E.D. Mo. Mar. 9, 2022). While an ALJ's consistency explanation need not be exhaustive, boilerplate or blanket statements are insufficient. *Lucas v. Saul*, 960 F.3d 1066, 1069 (8th Cir. 2020) (citing *Walker v. Comm'r, Soc. Sec. Admin.*, 911 F.3d 550, 554 (8th Cir. 2018)). Regardless of the adequacy of the ALJ's general summary of the record, he must still abide by the regulatory mandate to explain the supportability and consistency of a medical opinion in view of the evidence. *Martini*, 2022 WL 705528, at *5; *see also Pipkins v. Kijakazi*, 2022 WL 218898, at *4 (E.D. Mo. Jan. 25, 2022) (holding that whether the record as a whole supports the RFC determination is a separate consideration from the ALJ's obligation to explain the supportability and consistency of a medical opinion). The Regulations require more than a conclusory statement as to the supportability and consistency factors so a reviewing court can make a meaningful assessment. *Hirner v. Saul*, 2022 WL 3153720, at *9 (E.D. Mo. Aug. 8, 2022).

Here, the ALJ's consistency analysis for NP Patterson's medical opinion is a single sentence followed by a citation to seven pages of records from the approximately 700-page medical record: "the longitudinal record is consistent with lesser functional limitations as exemplified by the claimant's improvement and relative stabilization in the course of his treatment (Ex. 2F/1, 3-4, 22; 3F/37; 10F/1; 11F/12)." Tr. 26. The ALJ does not identify which of those four records demonstrate improvement or stabilization or how they are inconsistent with NP Patterson's opinion.

The first of the four records the ALJ cited is Plaintiff's July 2022 involuntary inpatient psychiatric hospitalization, the acute episode that predated NP Patterson's treatment. Tr. 401. It

11

documents pressured speech, psychomotor agitation, delusional thought content, and poor insight and judgment. Tr. 417. This record is not an example of "improvement and relative stabilization," considering it resulted in fifty days of inpatient hospitalization. The ALJ did not explain how this record is inconsistent with NP Patterson's limitations, which were grounded in persistent depression, fatigue, decreased motivation, withdrawal, and chronic suicidal ideation. Tr. 955.

The next record in the ALJ's string cite is a September 2022 treatment note from Brookhaven Behavioral Health, where Plaintiff was admitted into a structured therapeutic program following his 50-day hospitalization. Tr. 543-44. At that time, Plaintiff was under the legal guardianship of his sister and met the criteria for Serious Mental Illness. Tr. 541. The ALJ did not explain how a treatment note from a supervised residential program, generated during a period of guardianship and institutional care, demonstrated that NP Patterson's later assessment of Plaintiff's functional limitations was inconsistent with the record.

The third cited record is the first page of NP Patterson's own medical source statement. Tr. 955. The final record is a January 2024 treatment plan completed by Michelle Valente, a community support specialist at Independence Center, reflecting that Plaintiff described his mental health over the past year as "spotty" with symptoms of depression. Tr. 972. Plaintiff denied having a daily routine, reported sleeping approximately ten hours per night, typically eating only once a day, and having no leisure activities outside of walking his dog. *Id.* He reported frequently forgetting to take his medications approximately ten times per month. *Id.* He had no income and was in the process of appealing his disability denial, with his family paying his bills but unable to continue doing so long-term. *Id.* The ALJ did not explain how a treatment plan documenting the need for ongoing community support to accomplish basic tasks demonstrated that NP Patterson's opinion was inconsistent with the record.

12

The Commissioner argues the ALJ did not err in evaluating NP Patterson's opinion because the paragraph addressing consistency and supportability cannot be read in isolation, but must be analyzed with the entire determination. ECF No. 12 at 5-6. While the Court agrees that the opinion paragraph cannot be read in isolation but must be read as part of the overall RFC assessment, *see Trosper v. Saul*, 2021 WL 1857124, at *5 (E.D. Mo. May 10, 2021); *Krieg v. Kijakazi*, 2023 WL 4824558, at *9 (E.D. Mo. July 27, 2023), a review of the entire ALJ's opinion does not clarify the consistency analysis deficiencies related to NP Patterson.

In reaching the RFC determination, the ALJ began by summarizing Plaintiff's subjective allegations. He noted a Function Report, completed with the assistance of Anne Milne, LCSW, stating that his impairments affected his memory, ability to complete tasks, concentration, hand use, and relationships with others. Tr. 22 (citing 236, 241, 243). Plaintiff's sister submitted a third-party Function Report indicating his impairments prevented him from high-level mental processing and limited him to basic chores and short-distance driving. Tr. 22 (citing Tr. 244-47). His sister also submitted a narrative statement describing a court-ordered hospitalization in May 2022 and subsequent deterioration, resulting in a hospitalization exceeding 45 days. Tr. 22 (citing Tr. 325-27). Plaintiff submitted his own Function Report describing memory impairment, decreased energy, increased withdrawal and isolation, and issues with decision-making, scheduling, and task completion. Tr. 22 (citing Tr. 287). At his hearing, Plaintiff did testify he was able to drive, lived alone, and could mow grass and prepare meals. Tr. 22-23.

The ALJ cited to letters received from Dr. Jude Reed, M.D., and Lisa Reed, N.P. Tr. 25. Dr. Reed, writing in his capacity as Plaintiff's friend, summarized his history of heavy THC use beginning in early 2022 and the subsequent manifestation of substantial mental health symptoms, leaving Plaintiff "unable to carry on adult-level thought processing." Tr. 323-24. Lisa Reed supported her opinion with personal observations and her background as a nurse. Tr. 325-27.

13

Neither had treated Plaintiff nor maintained treatment notes. Tr. 25. Both opined that Plaintiff was incapable of holding employment, which the ALJ found to be a statement on an issue reserved to the Commissioner and therefore "inherently neither valuable nor persuasive." Tr. 25.

The ALJ cited the records related to Plaintiff's emergency hospital admission on May 26, 2022. Tr. 23. A mental status examination showed psychomotor agitation, manic behaviors, an increased rate of speech that was difficult to interrupt, tangential thought, grandiose thought content, poor judgment and insight, and impaired attention. *Id.* Urine analysis was notable for cannabis only. *Id.* Plaintiff was given risperidone and discharged on June 1, 2022. *Id.*

On July 12, 2022, Plaintiff was involuntarily committed. *Id.* The ALJ noted that Plaintiff was off his medication and experiencing a period of heightened manic behavior. *Id.* A mental status examination revealed a slightly disheveled appearance, psychomotor agitation, intense eye contact, noncooperation, guarded and confrontational behavior, pressured speech, derailed thought, delusional thought content, and poor insight and judgment. Tr. 23-24. The ALJ observed that Plaintiff "was stabilized on medication with significant improvement in his symptoms" and was discharged on August 31, 2022. *Id.* The same day, Plaintiff was admitted to The Academy, a behavioral health program. *Id.*

The ALJ reviewed the medical findings of state agents Martin Isenberg, Ph.D., and Gretchen Brandhorst, Psy.D. and found their opinions partially persuasive. Tr. 25. They opined that Plaintiff could concentrate for short periods of time, remember and carry out simple instructions, make simple work-related judgments, relate at an adequate level with coworkers and supervisors, and adjust to common changes in work routine or setting. *Id.* (citing Tr. 70, 82). The ALJ credited these findings but determined the overall record supported greater limitations than the state agency examiners identified, particularly regarding social functioning, adapting to changes in routine work settings, and performing production-rate work. Tr. 25.

14

The ALJ found the consultative opinion of Dr. Leonberger partially persuasive. Tr. 25. Dr. Leonberger examined Plaintiff on April 25, 2023, and listed his diagnoses as Bipolar I Disorder, moderate, current episode depressed, and mild cannabis use disorder. Tr. 789. He noted that Plaintiff was in the midst of a depressive episode in which "he ha[d] very little energy and spen[t] much of his time in bed." Tr. 790. Regarding understanding, memory, sustained concentration, persistence, and pace, Dr. Leonberger stated that these functions "would depend on his emotional state at the time that these functions are measured." *Id.* He observed that Plaintiff "does not have many friends" and "appears greatly dependent upon the assistance of his two sisters." Tr. 789. The ALJ found Dr. Leonberger's opinion supported by the examination results and consistent with significant stabilization in Plaintiff's behavior but determined that the record supported more limitations regarding Plaintiff's attention, concentration, and sociability. Tr. 25. Dr. Leonberger's findings seem to underscore rather than undermine NP Patterson's opinion as he expressly conditioned his assessment on Plaintiff's emotional state.

The ALJ did not reconcile evidence from the relevant period that appeared facially consistent with NP Patterson's opinion, for example, her notation of Plaintiff's ongoing depression even when he was "stable," *see* Tr. 1020-21, 1027-28; and his continued need for assistance from a community support specialist to handle basic tasks like making appointments, *see* Tr. 992. The Court's role is not to reweigh the evidence but to determine whether the decision is supported by substantial evidence on the record as a whole. *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015). The ALJ was required to explain how Plaintiff's trajectory of improvement or stabilization was inconsistent with NP Patterson's functional findings. *See Martini*, 2022 WL 705528, at *5 (holding that the ALJ must explain the consistency of a medical opinion in view of the evidence, regardless of the adequacy of the ALJ's general summary of the record). That explanation is absent here.

15

While the Court acknowledges that the ALJ's broader opinion documents clinical improvement from an acute psychiatric crisis resulting in hospitalization, it does not clarify how the record was inconsistent with the functional limitations NP Patterson identified. *See Pipkins*, 2022 WL 218898, at *4 (noting that the regulations direct the ALJ to specifically address and explain the consistency of the medical opinion itself, and that whether the evidence of record *in toto* supports the RFC determination is a separate consideration). NP Patterson's opinion was grounded not in ongoing mania, which the ALJ's narrative certainly addresses, but in his persistent depressive symptoms, fatigue, and withdrawal that remained. Simply, the ALJ has failed to sufficiently address the consistency of NP Patterson's medical opinion with the entirety of the medical record.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner of Social Security is **REVERSED** and that this case is **REMANDED** under 42 U.S.C. 1383(c)(3) and Sentence Four of 42 U.S.C. § 405(g) for reconsideration and further proceedings consistent with this opinion.

So Ordered this 6th the day of April, 2026.

_____

STEPHEN R. WELBY
UNITED STATES MAGISTRATE JUDGE

16